### J. M. CLAIBORNE v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY.

#### Decided November 25, 1899.

**1. Appeal—Affidavit in Lieu of Bond.**

The affidavit of inability which may be filed by an appellant in lieu of an appeal bond under article 1401, Revised Statutes, need not show on its face that the appellant is a resident of the county before whose county judge the affidavit is made.

**2. Same—Practice on Appeal—Jurisdictional Matter.**

Where appellant was a resident of the county where his affidavit of inability was made, such fact, being a jurisdictional one, could be shown by affidavits filed in the Court of Civil Appeals in answer to a motion made there to dismiss the appeal.

**3. Railway Company—Care Due Towards Trespasser—Discovered Peril— Contributory Negligence.**

Where one was on a freight train as a trespasser, and while the train was in motion attempted to climb across the tender, and the engineer, though aware of the danger of his position while making that attempt, put on steam so suddenly that the resultant jerk and forward leap of the train threw the man off, such action could not be justified on the ground that it was done in the necessary and prompt management of the engine, since the law requires that at least ordinary care shall be used to avoid serious and possibly fatal injury to even a trespasser, and his contributory negligence in so attempting to cross the tender would not deprive him of the right to have that degree of care exercised toward him after his peril was discovered and seen.

**4. Same—Engineer's Act Within Line of Duty.**

The act of the engineer in causing his engine to leap forward being within the line of his duty, the railway company was liable for the resultant injury.

APPEAL from Cooke. Tried below before Hon. D. E. BARRETT.

*Culp & Giddings,* for appellant.

*T. S. Miller* and *Head, Dillard & Muse,* for appellee.

ON MOTION TO DISMISS.

HUNTER, ASSOCIATE JUSTICE —This is a motion by appellee to dismiss the appeal, because the affidavit filed in the District Court, where the cause was tried, "was made before the county judge of Cooke County,

and it nowhere appears in the affidavit, in the petition, or elsewhere, that the plaintiff was a resident of that county."

This motion states the facts. Not even in plaintiff's petition does he give the county of his residence, nor is it shown in the statement of facts, or in the affidavit, and we approve the suggestion of the counsel that it would be eminently proper and better if in such cases the county of affiant's residence were stated in the affidavit. That is the proper place for it, though we do not mean to hold that if the fact appears in the petition or statement of facts it would not be sufficient.

In this case the appellant, in answer to this motion, filed his own affidavit and that of one of his attorneys, showing positively that, at the time he made said affidavit in lieu of appeal bond before the county judge of Cooke County, he was a resident of said Cooke County, and the question arises now whether we may consider his affidavits in order to determine whether he perfected his appeal so as to confer jurisdiction on this court in this case.

The article under which appellant has sought to appeal this case provides that when a party is unable to pay the costs of appeal or give security therefor, he still may prosecute his appeal by making strict proof of his inability to pay the costs or any part thereof; but this "proof shall be made before the county judge of the county where such party resides, or before the court trying the case, and shall consist of the affidavit of said party stating his inability to pay the costs." 1 Sayles' Civ. Stats., art. 1401.

If the affidavit was made before the county judge of any other county than that of appellant's residence, it would not perfect the appeal; but it will be observed that the statute does not require the affidavit to show the county of his residence, nor does it provide how or in what manner the fact must be made to appear, but it must appear to our satisfaction in some legal way that it was made before the county judge of the county in which he resided at the time it was made.

Our statute relating to the jurisdiction of the Courts of Civil Appeals, among other things, provides: "The said courts shall have power, upon affidavit or otherwise, as by the courts may be thought proper, to ascertain such matters of fact as may be necessary to the proper exercise of their jurisdiction." 1 Sayles Civ. Stats., art. 998.

As the fact in controversy is one which must determine our jurisdiction to hear this appeal, we are of opinion that it is our duty to receive the affidavits; and the necessary fact being clearly proved by them, the motion to dismiss the appeal is overruled.

*Overruled.*

ON FINAL HEARING.

Decided January 20, 1900.

CONNER, CHIEF JUSTICE.—This is an appeal from a verdict and judgment against appellant in a suit for damages for personal injuries

alleged to have resulted from the negligence of one of appellee's engineers. It was alleged, and appellant's evidence tended to show, that on September 20, 1897, while at Wichita Falls, intending to go to Gainesville, Texas, at the instance of a brakeman upon a mixed freight and passenger train of appellee, appellant gave said brakeman 50 cents for passage to the latter place, and by direction of said brakeman he got upon what is designated as the footboard behind and attached to the tender of the engine. This is a board about eighteen inches wide suspended from the back of said tender to within about twelve inches of the roadbed. After the train had proceeded to Carlyle, an intermediate station some nine miles from Wichita Falls, appellant was by said brakeman directed to get off said foot board to await some switching there necessary to be done. Appellant obeyed this direction, and upon the train again starting on its journey appellant resumed his position, whereupon, as he alleges and testifies, the engineer operating the engine drawing said train beckoned and invited him to come from his position on said footboard over the tender into the cab of the engine; that in doing so it was necessary to climb over said tender, and that while doing so the engineer negligently caused said engine to suddenly and violently lurch forward, which caused appellant to lose his hold, and he fell upon the track and was injured. It was alleged that the train, when appellant attempted to comply with the engineer's invitation, was going smoothly and at a moderate rate of speed; that in so attempting to climb over the tender appellant was in a hazardous position, which was seen and known by said engineer at the time, and that said engineer well knew that it was dangerous and liable to cause appellant great injury to change the speed at which said train was going or to cause said engine to jerk suddenly.

The defense thereto was a general denial, and a special plea to the effect that appellant was a trespasser upon said train at an unusual place and in known violation of appellee's rules, and that the risks thereof were assumed by him, and that if appellant was injured by employes of appellee they were acting outside of the scope of their authority, and that appellant's own negligence contributed to the injury.

The evidence further tended to show that appellant knew he was not entitled to ride from Wichita Falls to Gainesville for 50 cents, and that the brakeman alone was to benefit by said payment, the regular fare being about $2, appellant having at the time more than sufficient to pay this. We find no evidence, however, in the record tending to show that the engineer was a party to or had knowledge of this arrangement, or even knew of appellant's presence on the train prior to the time when appellant testifies he was invited to enter the engine cab as before stated. The evidence was conflicting as to whether said engineer could, or in fact did, see appellant in his effort, if any, to climb over the tender, and as to whether said engine was caused to make any sudden jerk or increase of speed, and as to whether appellant's injuries were caused as alleged.

We think a sufficient disposition of the questions raised by the assignments of error may be made in our treatment of the second assignment, and we therefore address ourselves to this alone.

At the request of appellee the court gave in charge to the jury, among others, the following special instruction: "Even should you believe from the evidence that the train gave a jerk or move forward and caused plaintiff to fall, and even though you believe that the engineer knew the position of the plaintiff at the time, yet if such jerk or movement forward was caused in the necessary or proper management of the engine, then you will return a verdict for the defendant."

It is insisted in behalf of appellee that there is no error in this charge, in that appellant was a trespasser on appellee's train, and his position not being necessarily perilous, the only duty the company owed him was not to willfully or wantonly injure him. The question as to whether appellant's position in making the effort to climb over the tender, if he did so, at the time of the accident, was one of extra peril, and as to whether the engineer saw and knew this, and so knowing negligently operated his engine so as to give a sudden jerk forward, were questions of fact to be determined from the evidence. There was evidence requiring the submission of these issues to the jury, as was in fact done by the court in his general charge, and if the jury should settle these issues in appellant's favor, then, whatever may be the doctrine of some text writers and of decisions in other States, the proposition insisted on in behalf of appellee is not the law in this State. The principle that all persons shall so use or cause to be used his own property, and shall so conduct or cause to be conducted his own business, however legitimate, as to not unnecessarily injure another, is sound as matter of universal application. If the engineer in fact saw appellant and knew of his perilous position, if it was one, and knew of the danger of causing a sudden jerk or increase in the speed of his engine, considerations of humanity dictated that he should at least use ordinary care to avoid the performance of an act that it was alleged he knew would probably result in injury to appellant, even though such act under ordinary circumstances was proper, usual, or customary in the "proper operation of the train." See Railway v. Grigsby, 13 Texas Civ. App., 639; Railway v. Belew, recently decided by this court, and authorities therein cited.

It is also insisted that appellant was negligent under the circumstances in attempting to climb over the tender, and that such negligence, contributing to his injuries, precludes a recovery. The evidence as it appears in the transcript is not such as to enable us to say as a matter of law that appellant was guilty of contributory negligence. This is a question for the jury's determination, but if it be conceded that appellant was negligent in assuming his position, the duty of avoiding injury to him by a negligent act arose immediately upon discovery of his perilous situation, if any. As was said in McDonald v. Railway, 86 Texas, 13, "The negligence or trespass of a person does not place him beyond the protection of the law, and does not excuse another for the

failure to exercise care to avoid injuring him; much less does it justify a willful injury. In such a case, although the negligence of the plaintiff, in one sense at least, contributes to the injury, the negligence of the defendant interevenes between the plaintiff's negligence and the result, and becomes the proximate cause of the injury. As some of the authorities put it, the plaintiff's negligence in such cases becomes the condition and not the efficient cause of the accident." See also Railway v. Jazo, 25 S. W. Rep., 714.

We freely concede that if, as insisted on by appellee on the authority of Railway v. Cooper, 88 Texas, 607, and Railway v. Yarborough, 39 Southwestern Reporter, 1097, the negligent act, if any, resulting in appellant's injury was not within the scope of the duty of its engineer, appellee is not liable. We also deem it unnecessary now to distinguish or to inquire to what extent, if at all, we should follow the doctrine announced by the Supreme Court of Mississippi in the cases of Williams v. Railway, 19 Southern Reporter, 90, and Railway v. Latham, 16 Southern Reporter, 757, and in the Minnesota case of Brevig v. Railway, 66 Northwestern Reporter, 401, for unlike the Mississippi and Minnesota cases, in the case before us the evidence fails to show, as before stated, that the engineer participated in any fraudulent or collusive purpose, or knew of appellant's position, if at all, until about the time appellant attempted, if he did so, to climb over into the cab of the engine, and the engineer's invitation, if given, is entirely consistent with a desire to thereby relieve appellant from a situation known to be dangerous. In the case before us, also, the negligent act imputed and upon which alone appellant seeks to recover, is the act of the engineer in causing his engine to suddenly move forward after discovering appellant's perilous position. We knew as matter of common knowledge that to the engineers of the railways of the country are intrusted the duty of controlling the locomotives committed to their custody. By their act and through the instrumentalities committed to them, the engine moves forward or ceases to move, so that we think the act imputed, if established by the evidence, was one clearly within the scope of the engineer's duties, and if negligent or wrongful, as alleged, the master is liable therefor. See Burnett v. Oechsner, 50 S. W. Rep., 562. See also the recent case of Railway v. Zantzinger, 53 S. W. Rep., 379.

For the error indicated, the judgment below is reversed and the cause remanded for another trial.

*Reversed and remanded.*